## JOHN WHITEAKER, APPELLANT, *v.* G. VANSCHOIACK AND WIFE, AND JOHN CURRIN, RESPONDENTS.

SPECIFIC PERFORMANCE.—Before the court will exercise its extraordinary jurisdiction of enforcing a specific performance, it must appear that the agreement sought to be enforced is fair and just; mutual in its character, and certain in its terms.

IDEM—WHERE THE TERMS OF THE CONTRACT HAVE BEEN VARIED BY PAROL.— Courts of equity will not, ordinarily, compel the specific performance of a contract with variations, additions, or new terms to be made and introduced into it by parol evidence.

DOWER.—In this State there is no dower in an equity.

APPEAL from Lane County.

This is a suit in equity to enforce the specific performance of an agreement in writing for the exchange of lands.

On the 4th day of May, 1872, appellant and respondent Vanschoiack entered into a written agreement for the exchange of certain lands. The agreement contained a proviso by which it was provided that the exchange should take place thirty days from the date of the agreement. The land that appellant thus agreed to convey had been purchased by him at a sheriff's sale, on the 10th of February, 1872, which sale had been confirmed April 23, 1872. Appellant had no other title to the tract than that derived through this sale. The time within which redemption of the tract so sold might be made, not having expired, the appellant had only a prospective title thereto at the time the agreement was executed. On May 27, 1872, before the time for the performance of said contract had expired, appellant and Vanschoiack, "in consideration of the agreement aforesaid, and the exchange of lands aforesaid," agreed by parol to extend the time for the performance of said contract of exchange until the period for redemption aforesaid should have expired, and the sheriff

5 113
5 254

5 113
24 98
32 1029
5 113
37 617
5 113
42 524
5 113
d46 395

made a good and sufficient deed to the appellant for the said land, which appellant was to convey, and which was designated as the McMurray claim; that in consideration of said agreement of extension and exchange of lands, the parties thereto agreed with each other to deposit each the deed of himself and wife of the land he had agreed to convey, with respondent John Currin, to be held by him until said sheriff's deed of the McMurray claim should be delivered to the plaintiff and recorded, at which time Currin was to deliver the deed of plaintiff and wife to Vanschoiack, and that of Vanschoiack and wife to the plaintiff; provided, however, that if said McMurray claim should be redeemed from said execution sale and not conveyed to plaintiff by the sheriff, then said deeds deposited with Currin were to be withdrawn and held for naught; that said deeds were accordingly executed by the parties and their wives, respectively, and left with Currin pursuant to said mentioned agreement, who agreed and promised that as soon as said sheriff's deed to plaintiff should be executed and recorded he would deliver to plaintiff the deed of Vanschoiack, and to the latter the deed executed by plaintiff. No redemption having been made of the McMurray claim, and the time of redemption having expired, the sheriff executed and delivered to the plaintiff a deed therefor, dated July 9, 1872, which was on the same day duly recorded, and on the 27th of said month the certificate of record was presented to Currin by plaintiff, who instructed him to deliver his deed to Vanschoiack, and demanded that he deliver to plaintiff the deed of Vanschoiack. Currin, by order of Vanschoiack, refused to deliver said deed to plaintiff, and Vanschoiack and wife refused to make a title to the lands therein mentioned to the plaintiff; that Currin still holds the deed of plaintiff and wife to Vanschoiack, with instructions to deliver it to the latter; that by reason of the premises plaintiff is damaged in the sum of one hundred dollars. The defendants interposed a demurrer to the complaint, which was sustained by the court below.

*Thompson & Fitch and R. S. Strahan,* for Appellant.

In law, a contract for the sale of land is simply treated as an executory agreement, while in equity it is considered as executed, and the vendee is treated as the equitable owner of the land, and the vendor as the trustee of the legal title for the benefit of the vendee. (Leading Cases in Eq., vol. 2, part 2, p. 26; 1 Story's Eq., § 790.)

It is the duty of the court to make an agreement effective if possible, *ut res magis valeat, quam pereat.* As to the subject-matter of a contract, extrinsic evidence may and must be received and used to make it certain if necessary for that purpose; as when a party conveys all his real estate by deed, describing it as all my real estate, without any other description, the instrument is good and operative, and evidence will be admitted to locate the premises. (2 Pars. on Con. 549; 17 Barbour's S. C. R. 269; 21 Wend. 652; 2 Vesey, Jr. 589; 13 Peters, 89.)

A promise to do what the promisor has not the present power to do, it not being impossible, illegal nor immoral, is a good consideration for the promise of another. (1 Pars. on Con. 460.)

Trust and confidence are a sufficient consideration to uphold an undertaking on the part of the trustee. (Id. 447.)

Time is not generally deemed, in equity, to be of the essence of the contract unless the parties have expressly so treated it, or it necessarily follows from the nature and consequences of the contract. (1 Story's Eq., § 776.)

Where delay may be accounted for upon the ground of the state of the title, it will not prevent a specific performance being decreed, where time is not treated by the parties as of the essence of the contract. (2 Leading Cas. in Eq., part 2, p. 14.)

Where there is nothing special in the nature of the property, or of the purposes for which it is intended to be purchased, although a particular day may be fixed for the completion of the contract, equity considers the general object to be the sale of the premises, and the particular day named as merely formal. Courts of equity look to the

substance of the contract, and do not allow small matters of variance to defeat them. (2 Leading Cas. in Eq., part 2, p. 18; Sug. on Vendors, chap. 5, p. 313; 1 Story's Eq., § 777.)

Time fixed for the performance may be waived by the acts of the parties. (Sug. on Vendors, § 3, 306; Id. 307, 308; Id. § 2, 298, 299.)

When a party treats a contract as subsisting after the purchaser's default, *held* to be a subject for specific performance. (14 Barb. S. C. 638.)

The state of the title when the contract was entered into is not material. It is sufficient if a good title can be made at the time of the decree. (2 Leading Cas. in Eq., part 2, pp. 15, 16, 30; Sug. on Vend. 302, § 3; 1 Story's Eq., § 775; 7 Vesey, 202; 2 Comstock, 60.)

A delivery may be either absolute, that is, to the grantee himself, or to a third person to hold until some conditions be performed on the part of the grantee; in which last case it is not delivered as a deed, but as an escrow; that is, a scrowl or writing which is not to take effect as a deed until the conditions be performed, and then it is a deed to all intents and purposes. (1 Blackstone, 306; Chitty on Con. 3; 3 Hilliard, 437, § 89; Id. 440, §§ 95, 96; 3 Washb. on Real Prop. 268, 272; 14 Ohio, 307.)

As a general rule the delivery of a deed is complete when the grantor has put it beyond his power to revoke or reclaim it. (6 Abb. Dig. 186, § 4.) Equity will decree the specific delivery of a deed to the party entitled thereto. (1 Leading Cas. in Eq. 592; 1 Story's Eq., § 703; Willard's Eq. 307.)

*E. C. Bronaugh and W. W. Thayer,* for Respondents.

Time was the essence of the original agreement. (3 Parsons on Con. 383; 2 Story's Eq., §§ 787, 793.)

There must have been consideration for the alleged contract for extension of time. (1 Pars. on Con. 427, 468; 21 Conn. 476.)

The execution and deposit of the deed by appellant was not a consideration, for the reason that appellant had no

title or assurance of title to the land described in his deed at the time he so executed and deposited it. There is a want of mutuality in the said alleged second agreement.

A. is not bound by a promise, without consideration, that at a future day he will sell property to B., unless the latter be likewise bound on his part to purchase of A. when that time arrives. (1 Pars. on Con. 448, 449; 13 Ill. 140; 12 Barb. 502; 12 How. 126; 1 John. Ch. R. 281, 370; 6 Paige, Ch. R. 288; 2 Story's Eq. Jur., § 776.)

And the question of mutuality depends on the terms of the contract itself, not upon circumstances arising after it is made. (*Cooper* v. *Penn*, 21 Cal. 403.)

The alleged agreement for extension of time was oral, and within the Statute of Frauds, and void. (15 John. 200; 9 Wend. 68; 5 Barn. and Adolph. 36; 6 Meeson & Welsby, 116; 2 Story's Eq. Jur., §§ 757, 762, 768, 770a, 776; 1 John. Ch. 274; 2 Edw. Ch. 445.)

Nor can such oral agreement be so connected with the written deeds as to relieve it of this objection, since a contract cannot exist partly in parol and partly in writing. (3 Pars. on Con. 13, 14; 1 John. Ch. R. 273.)

Neither was the delivery of the deeds to Currin a part performance of such parol contract, such as to take it out of the statute. (2 Story's Eq. Jur., § 762; 2 Lead. Cases in Eq. 527.)

Not only must a contract for the sale of lands be in writing, under the statute, but the lands must be certainly described in the writing, so as to be capable of identification without reference to extrinsic proof. (*Talman et al.* v. *Franklin*, 3 Duer, 395, 405; *Pipkin* v. *James*, 1 Hump. (Tenn.) 325; Brown on Stat. Frauds, § 385.)

A contract which is required to be in writing under the Statute of Frauds, must be averred to be in writing by the pleader. (1 Van Sandt v. Pl. 266, 267; 16 Barb. 365; 17 Barb. 141; 2 Duer, 609, 626.)

By the Court, MOSHER, J.:

Before the court will exercise its extraordinary jurisdiction of enforcing a specific performance it must appear that

the agreement sought to be enforced is fair and just, mutual in its character and certain in its terms.   The written agreement of May 4, 1872, contained neither the State, county, township, range nor section in which the lands were situated, and could not be enforced by reason of its uncertainty.   Not only must a contract for the sale of lands be in writing, under the statute, but the lands must be certainly described in the writing, so as to be capable of identification without reference to extrinsic proof.

It is urged by the counsel for appellant that this defect is cured by the parol agreement of May 27, 1872, whereby the time for the execution of the contract was extended, and under which the deeds. were delivered to Currin.   This agreement introduced new terms into the contract.   The first provided for the absolute exchange of lands within a time certain; the second, after adding to and perfecting the description of the lands, makes the performance of the contract depend upon the contingency that the plaintiff secured the title to himself.   Courts of equity will not, ordinarily, compel the specific performance of a contract with variations or additions, or new terms to be made and introduced into it by parol evidence, for in such a case the attempt is to enforce a contract, partly in writing and partly by parol, and courts of equity deem the writing to be higher proof of the real intentions of the parties than any parol proof can generally be, independently of the objection which arises under the Statute of Frauds.

Another objection to the binding obligation of the parol agreement is in the want of mutuality.   At the time of the execution of the deed by Whiteaker and wife, Whiteaker had no legal title to the land conveyed.   In this State there is no dower in an equity.   (*Farmer* v. *Loomis,* 2 Or. 29.)

The wife of the plaintiff only acquired a right of dower upon the execution of the deed to her husband by the sheriff, and this she cannot be compelled to confer.   Whiteaker, therefore, could not be compelled to make "a good and sufficient deed," and a want of mutuality forbids such a decree against the defendant.   The contract set up in the complaint is neither certain in its terms nor mutual in its

character, and the court below properly sustained the demurrer.

Decree of the court below affirmed.