PELLERITO v. WEBER

1. PROPERTY—TITLE—CONVEYANCE.

A person cannot convey greater title than he possesses.

2. VENDOR AND PURCHASER—ESTOPPEL.

Purchasers of land contract vendees' equitable title are estopped to deny the vendors' legal title to the purchased property until the full price of the original land contract has been paid.

3. PROPERTY—RESTRAINTS ON ALIENATION—FORFEITURES.

Restraints on alienation of property are strongly disfavored and when they are permitted, they are strictly construed to prevent a forfeiture.

4. VENDOR AND PURCHASER—LAND CONTRACT ASSIGNMENT.

No forfeiture is caused by the conveyance of a land contract vendees' equitable interest to subvendees without the contractually-required written consent of the vendors where the vendors have not made any allegations of waste, impairment, or loss of security and they continue to enjoy the benefits of their original contract.

Appeal from Iosco, Alan C. Miller, J.    Submitted Division 3 February 6, 1970, at Lansing.    (Docket No. 6,728.)    Decided February 26, 1970.

REFERENCES FOR POINTS IN HEADNOTES

[1]  42 Am Jur, Property § 52.
[2]  55 Am Jur, Vendor and Purchaser § 287.
[3, 5]  41 Am Jur, Perpetuities §§ 66, 74.
[4]  55 Am Jur, Vendor and Purchaser § 620.

Complaint by Peter Pellerito and Rosaria Pellerito against Wilmer L. Weber, Anne Weber, Eldon J. Dreher and Constance E. Dreher to foreclose a land contract. Judgment of no cause of action. Plaintiffs appeal. Affirmed.

*T. George Sternberg,* for plaintiffs.

*Paul Harvey,* for defendants.

Before: LESINSKI, C. J., and McGREGOR and V. J. BRENNAN, JJ.

LESINSKI, C. J.   Plaintiffs appeal a circuit court judgment in favor of defendants denying foreclosure and sale of certain land and property in Tawas City, Michigan.  The stipulated facts are as follows:

On September 24, 1953, plaintiffs, as vendors, and defendants Wilmer L. Weber and Anne Weber, as vendees, executed a land contract for the sale of a motel and land.  The $36,000 contract (hereinafter referred to as the 1953 contract) provided for a down payment of $13,500 and payments of $125 per month (principal and interest).  *Inter alia,* the 1953 contract contained the following provision:

"9. The purchaser covenants and agrees that he will not assign or convey his interest, or any part thereof, in this contract without having first obtained the written consent of seller.  Any violation by the purchaser of this condition shall be considered a default of one of the conditions of this contract."

The Webers have tendered and plaintiffs have accepted all monthly payments from September 24, 1953 to and including January 16, 1967 (leaving a balance, at the latter date, of $13,634.35).

On January 17, 1967, the Webers, without plaintiffs' consent, executed a land contract for the sale

of the Tawas City site to defendants Mr. and Mrs. Eldon J. Dreher. This contract (hereinafter referred to as the 1967 contract) provided for a $5,100 down payment (to the Webers), and a balance of $14,000 payable at $125 per month (principal and interest). On February 18, 1967, the Drehers sent plaintiffs a check for $125 and a note stating that "until further notice, we will be making the [1953] land contract payments for Mr. and Mrs. Weber." Plaintiffs refused to accept this check. However, the Webers again tendered that payment and the next payments (from February 18, 1967 to and including the date of this action) to plaintiffs, who retained but did not cash the checks.

Subsequently, on March 16, 1967 and on May 5, 1967, "notices of intention to declare forfeiture"[1] were sent to the Webers by plaintiffs. When no response was received, the plaintiffs brought the foreclosure action resulting in this appeal.

We are asked first to determine whether paragraph 9 of the 1953 contract is valid, and second, whether the 1967 contract constituted a violation of paragraph 9. Defendants' contention, concurred in by the trial court, is that paragraph 9 is an unreasonable restraint on the alienation of property and hence null and void. We do not find it necessary to decide this issue at this time.

Assuming *arguendo*[2] that paragraph 9 is valid and that the 1967 contract constituted a default thereunder, we fail to see where plaintiff has been damaged or his position as vendor-creditor made

---

[1] The claimed grounds of default were: (1) nonpayment of the February 18, 1967 installment and (2) violation of paragraph 9 of the 1953 land contract. The first claimed default has since been dropped by the parties from consideration.

[2] The validity of provisions restricting assignment of land contracts has long been *assumed* in Michigan. See Goddard, *Non-Assignment Provisions in Land Contracts*, 31 Mich L Rev 1 (1932), and especially *Sloman v. Cutler* (1932), 258 Mich 372. However, our

less secure. It is axiomatic that a person cannot convey greater title than he possesses.[3] The Webers possessed only the equitable title to the property and the facts indicate that the Drehers entered into the 1967 contract with notice of this fact. Thus the Webers and the land itself remain primarily liable upon the 1953 contract and the Drehers are estopped to deny the plaintiffs' legal title until the full purchase price (of the 1953 contract) has been paid. See *Cutler* v. *Lovinger* (1920), 212 Mich 272.

Restraints on alienation of property are strongly disfavored in Michigan. *Mandlebaum* v. *McDonell* (1874), 29 Mich 78, 107; Fratcher, *Restraints on Alienation of Equitable Interests in Michigan Property,* 51 Mich L Rev 509 (1953). Where they are permitted, they are strictly construed to prevent a forfeiture. *Ortmann* v. *First National Bank of Monroe* (1882), 49 Mich 56; Hodges v. Buell (1903), 134 Mich 162; *Hull* v. *Hostettler* (1923), 224 Mich 365. Here plaintiffs have not made any allegations of waste or impairment or loss of security. They continue to enjoy the benefit of their 1953 contract. See *Jankowski* v. *Jankowski* (1945), 311 Mich 340. Under the facts of this case we will not require a forfeiture; to do so would be to impose an unreasonable restraint on the alienation of an equitable interest in real property.

Affirmed.

All concurred.

---

research discloses no Michigan case where the question has been decided in a foreclosure action between the original vendor and *his* vendee. Perhaps a reevaluation of the dicta in cases such as *Sloman* v. *Cutler* and *Jankowski* v. *Jankowski* (1945), 311 Mich 340, is in order by the Supreme Court. This course has been suggested by various authors as a measure necessary to protect the lives and life savings of people of modest (and less than modest) means. See, for example, Fratcher, *Restraints on Alienation of Equitable Interests in Michigan Property,* 51 Mich L Rev 509. 551 (1953).

3 *Assignatus utitur jure auctoris,* Black's Law Dictionary (4th ed), p 152, citing authority.